Anna DUZYNSKI, Plaintiff-Appellant,

v.

Victoria NOSAL et al., Defendants-Appellees.

No. 14088.

United States Court of Appeals
Seventh Circuit.

Nov. 21, 1963.

Burton Joseph, Jerome H. Torshen, Chicago, Ill., for appellant.

Thomas D. Allen, David Jacker, Frederick W. Temple, Chicago, Ill., for defendants-appellees Dr. Edmund F. Foley and Dr. Bernard Skorodin; Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Daniel P. Ward, State's Atty., Thomas A. Hett, Asst. State's Atty., for defendants-appellees Dr. Eric C. Kast and Edward J. Reines; Edward J. Hladis, Chief of the Civil Division, Chicago, Ill., of counsel.

Before SCHNACKENBERG, SWYGERT and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This action is brought by plaintiff, Anna Duzynski, to recover damages occasioned by the alleged negligent and wilful acts of the various defendants and for the wrongful deprivation by such de-

fendants of her constitutional and civil rights, all of which acts resulted in her wrongful commitment to the Chicago State Hospital as a mentally ill person.

Plaintiff and her husband, Michael,[1] were taken into custody October 8, 1960, by Chicago police officers. Under circumstances hereinafter related, separate petitions were filed on October 8, against plaintiff and her husband, by defendant Reines, a clerk in the County Court of Cook County, Illinois, in which it was alleged on information and belief that plaintiff and her husband were in need of mental treatment and were mentally ill persons, incapable of managing and caring for their own estate.

October 17, 1960, an order was entered by the Judge of the Cook County Court in which it was found that plaintiff was "a mentally ill person, incapable of managing and caring for her own estate," and it was ordered that she be committed to the Department of Public Welfare for admission to Chicago State Hospital, as provided in the Illinois Mental Health Code (hereinafter referred to as the Code). Chap. 91½, Sec. 5-5, Ill.Rev. Stats.1959. Pursuant to this order she was committed to and confined in said institution until November 29, 1960 and on March 14, 1961, was by order of the same Court granted an "absolute discharge as recovered."

Defendants Dr. John Doe (whether this name is real or fictitious we are not advised) and Andrew Moziak were not served with process and the cause as to them was dismissed by the District Court on its own volition.[2] The complaint as to all other defendants was dismissed for failure to state a claim upon which relief could be granted. Plaintiff appeals from this order. In this Court, one brief was filed on behalf of the defendants Reines and Kast and other on behalf of the defendants Foley and Skorodin. No brief

was filed on behalf of the defendants Victoria Nosal, Frank Nosal, Jane Sobolak, Mary Mikolazczyk and Simon Mikolazczyk. (These parties will sometimes be referred to as the lay defendants.)

Jurisdiction is asserted by reason of diversity of citizenship (28 U.S.C.A. § 1332) and, as to certain of the defendants, under Title 42 U.S.C.A. §§ 1983, 1985 and 1986, and Amendment 14 to the United States Constitution.

■ We recognize, of course, that this Court is obligated, as was the District Court, to treat as a verity all well pleaded factual allegations of the complaint in determining if an action was stated which would entitle plaintiff to relief. However, a careful study of the complaint is convincing that many of its allegations are immaterial, others are of a conclusory nature and still others, even if proven, would be of no benefit to plaintiff. We shall, therefore, attempt to summarize the allegations of the complaint and the exhibits attached thereto which we think are material.

We shall first analyze the complaint as it relates to the lay defendants. Following the allegations designed to show diversity jurisdiction, the complaint alleges that in 1957, plaintiff and her husband came to this country from Germany and thereafter resided in the City of Chicago; that prior thereto they had become acquainted with the defendants Simon and Mary Mikolazczyk and, through them, after their arrival here, with Frank and Victoria Nosal. It is alleged that plaintiff and her husband were possessed of a limited education, were not fluent in the English language and relied upon the Mikolazczyks for advice and guidance. It is alleged that plaintiff and her husband accumulated $4500 which, except for $380, was deposited in a bank. This latter amount was retained by them in their apartment, with knowledge of

---

1. Plaintiff's husband was also found to be a mentally ill person. While confined to Chicago State Hospital, he took his own life. The allegations of the complaint as to him are irrelevant to the issue now before us for decision.

2. Inasmuch as the complaint has been dismissed for want of service as to Dr. Doe, and he is not named as a conspirator, we need not consider the allegations of the complaint as to him.

Frank Nosal and Moziak. On October 5, 1960, plaintiff discovered that this money was missing and suspected either Moziak or Frank Nosal, or both, of taking it. Moziak occupied an apartment directly below that of plaintiff and, on October 8, 1960, plaintiff discovered he was in his apartment and, in an effort to contact him, rushed down an outside stairway, falling against and breaking a window pane in his apartment. It is alleged that thereafter "one of the defendants, or some other person, notified the Chicago Police Department of this incident."

It is alleged that these lay defendants engaged in a conspiracy "to deprive the plaintiff and her deceased husband of their money and personal possessions, and in furtherance of said conspiracy did wrongfully, illegally, maliciously and tortiously complain to certain municipal authorities of the City of Chicago that the plaintiff was guilty of breaking and entering the apartment of one of the defendants and did furnish the investigating police with false and misleading information calculated to cause the arrest and/or confinement of the plaintiff and her husband." It is alleged that pursuant to the false and malicious information plaintiff and her husband were arrested and "in furtherance of the aforesaid conspiracy, they were confined as mentally ill persons and were thereafter declared to be mentally ill, which as a result of said adjudication, the plaintiff and her husband were committed and confined in the Chicago State Hospital."

There are no other allegations in the complaint which relate to or connect these lay defendants with plaintiff's adjudication or commitment. It will be noted that there is no allegation as to who furnished the police with the false and malicious information; in fact, as alleged, it might have been "some other person." What the information consisted of is not divulged, and neither is the name of any officer disclosed. The officers were called because of plaintiff's alleged breaking and entering of an apartment of one of the defendants.

Whether the officer or officers took plaintiff and her husband into custody lawfully or unlawfully is not shown and it must be presumed, under the circumstances, that their action was proper. There is nothing alleged that these lay defendants had anything to do with or took any part in the proceedings which followed and which resulted in plaintiff's commitment.

The next mention of these defendants follows the allegations concerning the other defendants in connection with the proceedings which culminated in plaintiff's commitment. It is alleged that the defendants Simon and Mary Mikolazczyk promised to secure her release from the hospital providing she turned over to them her money; that on November 29, 1960, they secured her release, went with her to the bank in which her funds were deposited, directed her to withdraw said funds, which she did, some of which were given to these two defendants. From the sum withdrawn, $1150 was paid to an undertaker for the funeral and burial expenses of her husband. The balance was retained by the Mikolazczyks, a portion of which was turned over to their daughter, Jane Sobolak (here mentioned in the complaint for the first time). It is alleged that subsequently plaintiff was paid $2000 of the amount asserted to have been unlawfully retained and that the Mikolazczyks still possess $1350 rightly belonging to her.

■ The allegations do not show that these defendants either individually or in concert initiated or took any part in the proceedings which resulted in plaintiff's commitment. Obviously, no action is stated against them under any provision of the Civil Rights Act, and it is not so contended. Her claim against these defendants appears to be based on the contention that they committed a tortious act by depriving her of her money. In our judgment, she is entitled to recover nothing more than the amount alleged to have been unlawfully taken and retained. Thus, the complaint on its face shows that the necessary jurisdictional amount is not involved. We hold that

the complaint was properly dismissed as to the lay defendants.

This brings us to a consideration of the action alleged against the defendants Reines, Skorodin, Foley, Kast and Doe, each of whom is alleged to have performed some act in the proceedings which culminated in the court Order of Commitment. The acts of each allegedly were taken pursuant to the provisions of the Code.

As stated in plaintiff's brief, Reines "is a clerk in the County Court of Cook County, Illinois. On October 8, 1960 he executed Petitions for Commitment of plaintiff and her husband. Said petitions alleged that plaintiff and her husband were in need of mental treatment and were mentally ill persons incapable of managing their own estate. Reines swore under oath that the information in the petitions was true to the best of his knowledge, information and belief. Reines, in fact, did not know either plaintiff or her husband. He had never even seen them." Skorodin "is a physician licensed to practice medicine in the State of Illinois. On October 8, 1960, pursuant to Article 6 of the Mental Health Code * * *, he executed a Physician's Certificate resulting in the confinement of plaintiff." Kast and Foley "are also physicians licensed to practice in the State of Illinois. Pursuant to Section 5–5 of the Illinois Mental Health Code, they signed a Report of Commission in which they certified that plaintiff was a mentally ill person in need of mental treatment and recommended that she be committed to a mental hospital."

Section 5–1 of the Code, pursuant to which Reines acted, provides in part, "When any person shall be, or be supposed to be, mentally ill, mentally deficient, or in need of mental treatment, any reputable citizen of this State may, in the county where such person resides, or is found, file with the clerk of any court of such county having jurisdiction a verified petition alleging that such named person is mentally ill, mentally deficient, or in need of mental treatment * * *." The section requires the peti-

tion to state "names of the witnesses by which the facts alleged may be proven, at least one of which witnesses having personal knowledge of the case shall be a qualified physician * * *."

Section 5–3 provides that upon filing of the petition "the clerk of the court shall immediately present the same to the judge of the court who shall set the same for hearing at such time, not more than 15 days after the filing of such petition, as the Court shall determine." This section outlines the procedure to be followed by the court, including the requirement that reasonable notice of the time and place of the hearing be served upon the person alleged to be mentally ill, etc.

Section 5–4 provides that the person alleged to be mentally ill, etc., or any person interested in his behalf, shall have the right to demand "that the question of the mental illness, mental deficiency, or need of mental treatment of such person be tried by jury." When a jury trial is demanded, the jury shall consist of six persons, one of whom shall be a qualified physician.

Section 5–5 sets forth the procedure where no jury trial is demanded or where the court determines that such a trial is unnecessary. It provides, " * * * the Court may appoint a commission of two qualified physicians if the allegation is mental illness or need of mental treatment * * *." This section also provides, "The personnel of the commission so appointed shall be of recognized competency and integrity, and shall act together as a commission to make a personal examination of the person alleged to be mentally ill, mentally deficient, or in need of mental treatment and prepare a written report * * *." The original of the report is to be filed with the clerk of the court and a copy thereof furnished the person alleged to be mentally ill. Pursuant to this section, Foley and Kast were appointed by the Court to examine plaintiff and make a report.

Section 5–6 provides for a hearing by the court upon the petition and the report of the commission.

It may also be noted that Reines in his petition gave the name of Dr. Skorodin as a witness by whom the facts alleged might be proven, and attached thereto a copy of the doctor's certificate, which stated that he had personally made an examination of plaintiff and that it was his opinion and conclusion that she was a mentally ill person, with the recommendation that she be committed for care and treatment. In addition to the doctor's certificate, Reines received information as to plaintiff's mental condition, the nature of which is not disclosed, from members of the police force who had originally taken her into custody.

The report of the commission, signed by Drs. Foley and Kast, certifies as to their appointment by the court, pursuant to Sec. 5–5 of the Code, and states that they personally examined plaintiff on October 12, 1960, and found her to be a mentally ill person, in need of mental treatment. They also found that plaintiff was suffering from "schizophrenia," that she was "withdrawn, autistic, manneristic, poor contact, when questioned in Polish she answers in English," and, most important, that at the time of the hearing she was *"actively* hallucinating." The commission recommended that plaintiff be committed to a mental hospital and that her condition was such as to need immediate hospitalization.

The proceedings which occurred at the time of the court hearing which resulted in plaintiff's commitment are not shown. However, there is attached to the complaint a copy of the Order of Commitment which shows among other things that the matter came on for hearing on October 17, 1960, upon the petition and the report of the commission; that notice had been served upon all persons entitled thereto, including plaintiff; that she was present in court, and that no demand had been made for a jury and no showing that such a trial was necessary or desirable. The court found that plaintiff was a mentally ill person, incapable of managing and caring for her own estate, that the allegations of the petition were true and ordered her committed to

the Department of Public Welfare for admission to the Chicago State Hospital. As stated in plaintiff's brief, "The Order of Commitment was executed by Robert J. Sears, a Judge of the County Court of Cook County, Illinois, who made his own findings, after considering the report of the commission."

We think it not open to dispute, from the allegations of the complaint in connection with the exhibits attached thereto, that Reines and Skorodin, as well as Foley and Kast as a commission, not only acted pursuant to but in compliance with the provisions of the statute. In this connection it is highly significant to note that plaintiff makes no allegation that she was not a person mentally ill, as certified to by Skorodin, as alleged in the petition filed by Reines, as found by Foley and Kast acting as a commission, and as determined by the court in its Order of Commitment.

We have heretofore sufficiently set forth the capacity in which each of the defendants Foley, Kast, Skorodin and Reines acted in the proceedings against plaintiff in the County Court. While plaintiff as to these defendants has invoked Title 42 U.S.C.A. §§ 1983, 1985 and 1986, and Amendment 14 of the Constitution, we understand from her brief that principal reliance is based upon Sec. 1983.

We first consider the situation of Drs. Foley and Kast whose positions are identical and both of whom invoke the defense of judicial immunity. As already noted, these defendants were appointed by the Court as members of a statutory commission charged with the duty of finding facts concerning the mental condition of plaintiff and making recommendation to the Court. The commission was empowered to administer oaths, take sworn testimony and compel the attendance of witnesses. Acting as a commission they made a determination of the factual issues involved and, based thereon, made their recommendation to the Court.

Plaintiff cites cases from other jurisdictions which purportedly support her

contention that Foley and Kast are not immune from a civil action. We find no occasion, however, to cite or discuss such cases because the issue of judicial immunity for a doctor, acting under circumstances almost identical with those alleged here, has been decided by this Court. Bartlett v. Weimer, 7 Cir., 268 F.2d 860 (cert. den. 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358). In that case, the defendant was one of two doctors appointed by the Probate Court to examine as to the mental health of Bartlett and to report their findings to the Court. This Court, further describing the allegations of the complaint, stated (page 861 of 268 F.2d):

> "The complaint charges that the manner in which the examination was conducted and the nature of the purported medical findings amounted to a deprivation of appellants' constitutional rights under the Civil Rights Statute. 42 U.S.C.A. § 1983. The complaint additionally alleged jurisdiction by virtue of diversity of citizenship and charged appellee with libel, slander and with being a party to a conspiracy to maliciously prosecute appellant and to cause to be falsely committed to a mental institution."

In deciding the issue, the Court stated (page 862 of 268 F.2d):

> "Appellee's motion to dismiss the complaint was granted by the district court, and, we hold, properly so. Appellee was appointed and acted as an officer of the court to give his opinion as to the mental health of appellant; and, while acting in such capacity, was protected by the same immunity extended to judges and other judicial officers. Appellant cannot, therefore, maintain an action against appellee in the federal district courts under the Civil Rights Act."

Plaintiff in discussing this judicial immunity doctrine makes no mention of this recent decision. It is intimated rather feebly that the doctrine therein announced has been emasculated by the Civil Rights Act, particularly in view of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. A reading of the cases furnishes little if any support for this suggestion. The District Court, in Rhodes v. Houston et al., D.C., 202 F. Supp. 624, page 629, in a well reasoned discussion relative to judicial immunity, among other things stated, "The passage of the federal Civil Rights Act did not abrogate this traditional immunity," and further on the same page, "The recent opinion of the United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) does not, as plaintiff suggests, overturn or modify the doctrine of judicial immunity in a federal civil rights action. An examination of all federal cases which have cited Monroe v. Pape reveals that it has not yet been considered for its effect, if any, upon the well established rule of judicial immunity."

We hold that the defendants Foley and Kast were entitled to invoke the defense of judicial immunity, both as to the alleged actions under the Civil Rights Act and those alleged under diversity jurisdiction, and, therefore, the complaint was properly dismissed as to them.

We now come to the cause of action alleged against the defendants Reines and Skorodin whose positions are substantially in the same category. The main issue as to them, insofar as it pertains to Sec. 1983 of the Civil Rights Act, is whether they acted "under color of any statute, ordinance, regulation * * *." It seems to us that plaintiff's argument on this issue wavers between that made in her main brief and that in her reply brief. In the former she stated, "Reines in executing the Petition for Commitment was not acting in a judicial capacity but performed an action which 'any reputable citizen of this state' might have performed." As to Skorodin, she stated, "He signed a physician's certificate which, as will be demonstrated below, could have been signed by any physician in the state. * * * His

place of employment does not put him in a category separate and apart from other doctors. * * * In the case at bar, this physician's certificate was executed by the defendant Skorodin. It could have been prepared by any physician." In plaintiff's reply brief, she argues that Reines and Skorodin "in preparing and executing these documents acted in their official capacities as employees of Cook County. * * * Had Reines and Skorodin not been officials of Cook County, they, in all likelihood, would never have heard of the Duzynskis. * * * As a practical matter, the police, who unquestionably acted under color of state law, would not pass this information [that pertaining to plaintiff's mental condition] on to one who was not an official of the County or who was not acting in an official capacity."

We think it is hardly open to dispute but that Reines, while a clerk of the court, acted not in his official position but as a private citizen in signing the petition. Likewise, Skorodin, while an employee of the Cook County Mental Health Clinic, examined plaintiff and certified to her mental illness not as a county official but in his capacity as a private physician.

Section 1983 has been held to apply solely and exclusively to acts by state officers who use their authority, or misuse it, or purport to use their authority (although, in fact, acting outside their official function) to deprive a person of federally protected rights. Private persons, although they may in fact deprive another person of federally protected rights, are not liable under Sec. 1983.

Spampinato v. M. Breger & Co., 2 Cir., 270 F.2d 46 (cert. den. 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363), is much in point as to Skorodin and its rationale is equally applicable to Reines. In that case, a doctor associated with the staff of a City Hospital signed a certificate authorizing that plaintiffs be taken to the psychopathic ward of the same hospital. It was alleged that this was a deprivation of plaintiffs' rights under Sec. 1983. The Court in affirming a dismissal of the complaint stated (page 49 of 270 F.2d):

"Section 1983 of the Civil Rights statutes preserves constitutional rights from infringement by persons who act under federal or state authority, not private citizens who commit wrongful acts, however wilful and malicious they may be. [Citing cases.] Section 1985 of the Civil Rights statutes applies to a conspiracy of private persons but only where the object of the conspiracy is to deprive a person of equal protection of the laws. [Citing cases.]"

The Court also held that no cause of action was stated under Sec. 1985 because of failure to allege in the complaint that defendant had "deprived the plaintiffs of equal protection of the law [citing cases]."

We have examined the many cases cited in the briefs and in all of them without exception the actions based upon Sec. 1983 were against public officials in one form or another. In Monroe v. Pape, 365 U.S. 167, page 172, 81 S.Ct. 473, page 476, 5 L.Ed.2d 492, the action was against police officers and the Court decided that the section gave "a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." In Cohen v. Norris, 9 Cir., 300 F.2d 24, much relied upon by plaintiff, the action also was against police officers while acting under color of their authority as such. In Picking v. Pennsylvania R. Co., 151 F.2d 240, the action was brought against state officers. In McShane v. Moldovan, 6 Cir., 172 F.2d 1016, the action was against a justice of the peace and constable. In Yates v. Village of Hoffman Estates, D.C., 209 F.Supp. 757, the action was against a police magistrate.

True, the complaint alleges that Reines "wilfully, purposefully and fraudulently did execute a petition, without knowledge of the facts therein stated, under color of, and in violation of, the Illinois Mental Health Code." A similar allegation is

made as to Foley, Kast and Skorodin in that they acted "under color of, and in violation of" the same Code. These allegations are conclusions of the pleader. Spampinato v. Breger & Co., 2 Cir., 270 F.2d 46, 49. See also Skolnick v. Spolar et al., 7 Cir., 317 F.2d 857, 859 (a decision by this Court). Moreover, the conclusion is erroneous. Reines and Skorodin as private individuals did not act under color of the Illinois Code or any other law. They acted, as the complaint alleges, pursuant to the provisions of the Code and, we might add, in compliance therewith.

██ We discern no reason to enter into any extended discussion of plaintiff's allegation that Reines, Skorodin, Foley and Kast conspired to deprive plaintiff of her constitutional rights. Obviously, no action is stated under Secs. 1985 and 1986 of the Civil Rights Act. The former section covers a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The latter section makes any person liable who has knowledge of the wrongs conspired to be done under Sec. 1985, and who with the power to prevent such wrongs refuses or neglects to do so. The complaint fails to make the requisite allegations in order to state a claim under these sections. Plaintiff strongly urges, however, that an action for conspiracy may be maintained under Sec. 1983, and relies upon Cohen v. Norris, 9 Cir., 300 F.2d 24. True, the Court so held, but it must be remembered that the defendants in that case were police officers acting in concert, who conspired under color of their authority as such to deprive the plaintiff of rights. In contrast, the conspiracy charged here, particularly as it relates to Reines and Skorodin, is directed at parties who performed no act in an official capacity and consequently did not act under color of law.

Furthermore, we are of the view that the acts performed and the parts taken in the proceedings by Reines, Skorodin, Foley and Kast, as alleged in the complaint and shown by the exhibits attached thereto, dispel any notion that they were engaged in a conspiracy. They did not even act in unison or concert but each of them acted independently, in pursuance of and in compliance with an applicable provision of the Code. If all the allegations made with reference to the conspiracy were proven on a trial, it would not be sufficient, in our judgment, to take the issue to a jury.

The acts alleged in the complaint as to what each of the defendants did in furtherance of the conspiracy are in the main those of omission rather than of commission. For instance, it is alleged as to Reines, and similar allegations are made with respect to the other defendants, that he failed to inform plaintiff as to the purpose for which she was at the Mental Health Clinic, failed to obtain a translator for her, failed to inform her of the nature of the judicial hearing which resulted in her commitment, to inform her as to her right to trial by jury, as to her right to employ counsel or to call witnesses in her behalf. None of these alleged failures constituted negligence on the part of Reines because he was under no duty to so inform her. In fact, none of the defendants were so obligated. All of such matters were within the prerogative of the Court which heard the case and ordered plaintiff's commitment. Plaintiff by her allegations, evidently recognizing that she cannot maintain an action against the Judge, is attempting to shift to these defendants a burden which the law casts upon the Court.

The complaint, when stripped of its conclusory and irrelevant allegations, taken in connection with the exhibits attached to it, in our judgment states no action upon which relief could be granted under the common law, the Illinois statutory law or the United States Civil Rights Act.

The judgment of dismissal is

Affirmed.