**Paul RHODES, Appellant,**

v.

**Clarence A. H. MEYER et al., Appellees.**

**Paul RHODES, Appellant,**

v.

**Richard M. VAN STEENBERG et al., Appellees.**

**Nos. 17580, 17588.**

United States Court of Appeals Eighth Circuit.

Aug. 5, 1964.

Certiorari Denied Nov. 16, 1964.

See 85 S.Ct. 263.

Robert A. Nelson, Sp. Asst. Atty. Gen. of Nebraska, Lincoln, Neb., made argument for appellees Clarence A. H. Meyer, and others, and filed brief with Clarence A. H. Meyer, Atty. Gen. of Nebraska, Lincoln, Neb.

Wm. F. Ryan, Deputy County Atty. of Douglas County, Nebraska, Omaha, Neb., made argument for appellees Patrick E. Corrigan and Jack Knudtson, and filed brief with Donald L. Knowles, County Atty. of Douglas County, Nebraska, Omaha, Neb.

Paul Rhodes, Howe, Neb., made oral argument pro se and filed brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Paul E. Rhodes appeals from final judgment dismissing his complaint in each of these cases as to all defendants upon motions to dismiss filed by defend-

ants. These cases were heard separately below. They were argued together here. We will deal with both cases in this opinion as many of the parties and issues are common and the disposition of both cases is controlled by the same underlying principles. Case No. 17,580 (No. 01682 below) will be referred to as Meyer. Case No. 17,588 (No. 01784 below) will be referred to as Van Steenberg.

Plaintiff's causes of action are based upon asserted violation of federal civil rights arising out of his alleged wrongful conviction of contempt of court by the Nebraska State District Court and the service of the sentence imposed. Substantial actual and exemplary damages are claimed.

Plaintiff in brief describes his action as a civil rights action to recover damages from the defendants for twice imposing involuntary servitude in violation of the XIII and XIV Amendments to the United States Constitution without conviction for a crime as a result of a conspiracy among the defendants consisting of State Supreme Court Justices, State District Judges, prosecuting attorneys, Clerks of Court, sheriffs, law enforcement officers, prison officials and members of the Nebraska integrated bar. Plaintiff's double imprisonment claim is based upon his contention that he twice served his sentence, once while he was held in the penitentiary pending appeal from his conviction and prior to his posting bail and again when he was compelled to serve a sentence after mandate issued by the Supreme Court dismissing his appeal. Complaint is likewise made of being held incommunicado while in the penitentiary and mistreatment in other respects. Deprivation and violation of rights guaranteed by the IV, V, VI, VII and VIII Amendments and Article 1,

Section 9 of the United States Constitution are likewise claimed.

Judge Delehant, with great care and thoroughness, has accurately described the pleadings and the extensive history of this litigation in excellent memorandum opinions reported at 225 F.Supp. 80 (Meyer) and 225 F.Supp. 113 (Van Steenberg).

Judge Van Pelt in Rhodes v. Houston, D.C.Neb., 202 F.Supp. 624, aff'd, 8 Cir., 309 F.2d 959, cert. denied 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, a previous civil rights action of the plaintiff based upon the same violation of his rights here asserted, largely relied upon by Judge Delehant in the present case, fairly describes such cause of action and sets out with extensive supporting authority the law of judicial immunity and related immunity of public officials carrying out judicial orders.[1]

Since a full and fair description of the pleadings, facts and issues involved in the multiple cases instituted by the plaintiff is readily available in the opinions just mentioned, we do not feel justified in consuming the considerable space which would be required to set such material forth in detail here. Such matters to the minimum extent necessary will be set out in our discussion of the issues to which we now turn our attention.

## I. JURISDICTION.

No diversity of citizenship here exists. Jurisdiction is based exclusively upon the Civil Rights Act, 42 U.S.C.A. §§ 1981, 1983, and 1985 to 1988. Defendants in each action urged that the complaint be dismissed for want of jurisdiction. Upon this issue, Judge Delehant states:

"And the writer of this memorandum acknowledges grave doubt whether, even on paper, the plaintiff

---

1. See also the following Nebraska Supreme Court opinions casting some light upon the issues here present: Rhodes v. Houston, 172 Neb. 177, 108 N.W.2d 807 (habeas corpus); Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731 (habeas corpus); Rhodes v. Crites, 173 Neb. 501, 113 N.W.2d 611 (false imprisonment);

Rhodes v. Star Herald Printing Co., 173 Neb. 496, 113 N.W.2d 658 (libel); McFarland v. State, 172 Neb. 251, 109 N.W. 2d 397 (upholds conviction of Judge McFarland for contempt closely related to the contempt for which plaintiff was convicted).

712

has brought himself under the jurisdictional coverage of the Civil Rights Act, whether that Act ever has been or, even with its current liberal application, is, operative to confer jurisdiction on this court to determine, as between citizens of Nebraska, controversies that arise out of what is essentially a suit for damages on account of false imprisonment or malicious prosecution, or both." 225 F.Supp. 80, 96. See 225 F.Supp. 113, 128–129.

We fully share the trial court's doubt that jurisdiction exists. See Sarelas v. Sheehan, 7 Cir., 326 F.2d 490; Hulburt v. Graham, 6 Cir., 323 F.2d 723, 725; Byrd v. Sexton, 8 Cir., 277 F.2d 418; Basista v. Weir, W.D.Pa., 225 F.Supp. 619, 625 to 628.

Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 definitely enlarges the scope of civil rights litigation. There is a marked distinction factually between that case and this. In Pape, the search appears to have been clearly illegal and no prosecution followed. Here plaintiff's contempt conviction which gave rise to the imprisonment has become final by reason of the dismissal of his appeal by the Nebraska Supreme Court for want of prosecution. As Judge Delehant points out, a number of state habeas corpus petitions based upon the conviction have been considered and denied. Moreover, Judge Van Pelt in Houston fully considered the constitutional attack here made upon the contempt conviction and found such conviction to be in all respect valid. As has been pointed out, this decision has been affirmed by this court and certiorari has been denied. It is difficult to see how the imprisonment imposed as a result of such conviction can possibly afford a basis for a violation of plaintiff's civil rights.

Finality of this protracted series of litigation arising out of a common source is highly desirable. In our view, Judge Delehant's decision upon the merits is clearly right for reasons hereinafter discussed. Hence, like the trial court, we shall assume without so deciding that jurisdiction exists.

## II. RES JUDICATA/CLAIM PRECLUSION.

The defendants in Meyer and Van Steenberg who were also defendants in Houston asserted the defense of res judicata in their various motions to dismiss and such defense is maintained in these appeals. After a thorough, and we believe accurate, examination and comparison of each of the actions below with Houston, Judge Delehant concluded:

"[T]his court would be on solid ground if it were to regard Rhodes v. Houston * * * as dispositive adversely to the plaintiff herein, and in favor of all of the defendants hereto except [those who were not prior defendants and the Justices of the Supreme Court of Nebraska who, although prior defendants, were not previously charged as liable in damages] upon all of the plaintiff's claim herein, insofar as it rests upon facts that existed when the ruling in Rhodes v. Houston * * * was made." 225 F.Supp. 80, 106, Cf. 225 F.Supp. 113, 128.

The doctrine of res judicata is especially applicable where protracted and multiple litigation of similar issues appears to be in the offing. Thus, without desiring to be repetitive of the extreme detail in which the district court examined the pleadings, this court shall reexamine them to the extent necessary to determine if either res judicata or stare decisis applies thereto.

This court recently had the occasion to discuss the test of sameness of causes of action and the following test was applied:

" 'The primary test for comparing causes of action has long been whether or not the primary right and duty, and the delict or wrong combined are the same in each action. Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 * * *.' " Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30, 32.

The district court below observed that the opinion by Judge Van Pelt in Houston is "a notably correct and carefully reasoned deliverance in a case which was indistinguishable from the present one, whose setting and basic averments were, in fact had to be, identical with those now advanced by the plaintiff. The material out of which both of them have been made has been the experience over a limited period of time of one man with a single, though not entirely simple, problem." 225 F.Supp. 113, 131. Cf. 225 F.Supp. 80, 92–93.

The cases we are here considering and Houston allege similar conspiracies under the same Civil Rights Act. These conspiracies allegedly generated from the same source—a trial in state court for contempt of court in which the plaintiff herein was the defendant. The core of plaintiff's alleged wrongful treatment or handling by the various officials named as defendants in these cases stems from what plaintiff terms his trial in absentia. Indeed, were this an issue yet to be determined, we would certainly be inclined to drop the axe on this litigation less quickly; but the issue concerning the denial of the motion for continuance and the termination of the contempt trial without the presence of plaintiff was thoroughly discussed by Judge Van Pelt in Houston and adequately and correctly determined by him to be no basis for a claim against these defendants, 202 F. Supp. 624, 630–633. This finding reams the core out of plaintiff's complaints.

Judge Delehant concluded after an analysis of the pleadings that:

"It may accurately be said that the claim which the plaintiff undertakes to make out in his amended complaint herein was—and is—the claim which, in multiple counts, he tried to assert in [Houston], plus two features which briefly reflected, are (a) the completion after the ruling of Judge Van Pelt, of his imprisonment and (b) the use of alleged misstatements, both on affidavits and in briefs and oral argument, which is charged to have occurred in the course of the Houston case itself. But the completion of the imprisonment added only in degree, not in kind, to the claim the plaintiff tendered in that case. And, touching the alleged misrepresentations in the course of that litigation, it is sufficiently observed that the Houston case itself provided the occasion, the framework, and the forum, in which that conduct, if it occurred, should have been challenged and thwarted. Its reservation for the present occasion savors too strongly of 'second guessing.'" 225 F.Supp. 80, 108.

Thus, if this court agrees that the two additional features, supra, do not substantially change the claim in these cases from Houston, then at least to the identical parties in the actions, the doctrine of res judicata should apply.

The first feature—the completion of the imprisonment after the ruling in Houston—is the primary basis of the Van Steenberg case. In simple terms plaintiff asserts that he was required to serve his sentence two times in violation of his constitutional guarantee against involuntary servitude and cruel and unusual punishment. The first imprisonment took place during the period of time plaintiff's sentence was suspended pending appeal. Upon his confinement in the penitentiary, plaintiff sought a writ of habeas corpus against the Warden of the penitentiary. The Supreme Court of Nebraska affirmed the denial of the issuance of the writ, stating:

"We need not determine here whether the issuance of the order of commitment on November 25, 1960, was regular or irregular. As to that the rule is: If the proceedings subsequent to conviction are erroneous, such errors can be reviewed and corrected by proceedings in error in the regular course of the law, but not by the writ of habeas corpus. In re Application of Cole, 103 Neb. 802, 174 N.W. 509, 848." (For a more recent case with the same holding, see Von Bokelman v. Sigler, 1963, 175 Neb. 305, 121 N.W.2d 572.)

"We think it clear that from the 21st of November 1960, when the contempt judgment was rendered, the relator was subject to be taken into custody and held pending further orders of the court. Our order suspending the sentence did not suspend liability to that custody save and until the relator was admitted to bail. Relator is now being held in custody pending the determination of error proceedings from Morrill County. He is not being held as one serving the sentence imposed in that action.

"It appears from this showing that the sheriff had full authority under the provisions of section 29—1001, R.R.S.1943, to hold relator in a 'secure and convenient place of confinement.' " Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731, 733.

■ Plaintiff eventually posted bail on August 21, 1961, whereupon he was released from custody. However, during his period of freedom plaintiff failed to file briefs to perfect his pending review of the sentence for contempt within the statutory period which expired September 21, 1961, and on October 17, 1961, the Nebraska Supreme Court dismissed the error proceeding for that reason. Thus for no apparent reason plaintiff refused to take his argument that the state district court had no jurisdiction to sentence him to "hard labor" for contempt of court to the appellate level. Assuming such a sentence would be contrary to the Constitutional provisions against involuntary servitude, and disregarding the individual affidavits of the Warden and Deputy Warden stating that "Rhodes was not subjected to hard labor at any time during his residence in this institution nor labor of any other description nor does this affiant intend to subject or allow Rhodes to be subjected to labor of any description during his residence at this institution," which were filed in the Houston case on December 18, 1961, this court doubts that it is the intention of the Civil Rights Act to allow a person knowledgeable of the procedures of the law to ignore his chance to have an error corrected and then attack the administrators of justice who were denied the opportunity to correct the error in an action for monetary damages.

It is here noted that plaintiff alleges he is an attorney at law. Judge Delehant in his opinion states plaintiff is a graduate of the University of Nebraska Law School and that he was admitted to the Nebraska Bar in 1943 and that he is an experienced practitioner. Plaintiff appeared pro se in these cases before us and personally argued the cases on appeal.

■ Nevertheless, the fact of the second imprisonment—the actual serving of the sentence—was before the court in Houston in such a degree as to make the application of res judicata justifiable. After a careful consideration of the filing dates in Houston, in relation to the periods of confinement of the plaintiff, Judge Delehant states:

"Hence, his initial imprisonment was a completed fact, and his second imprisonment was in current progress when Judge Van Pelt's final ruling was made. The last six months of Mr. Rhodes' second imprisonment, indeed, occurred after Judge Van Pelt's final ruling. But the basic fact of even that imprisonment was then in current progress, and its threatened inception had earlier undergone the consideration of Judge Van Pelt, who had denied a prayer for its restraint, supra." 225 F. Supp. 113, 128.

The continuance of the second confinement is the natural result of the decision in Houston, and since the court there found no basis for a civil rights action up to that point, certainly no new cause of action is created beyond that point, at least in regard to the two-time defendants. See Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30, 35–36.

The second feature mentioned supra—the use of alleged misstatements in the Houston case itself—is the primary basis of the Meyer case, although the pleadings do relate somewhat to the second

confinement also. Plaintiff alleged in Meyer that a number of the defendants conspired and secured from H. Snyder, Deputy Sheriff of Denver County, Colorado, a false affidavit to the effect that plaintiff had been served a Notice of Hearing in the contempt trial then pending, "knowing said affidavit of service of Notice of Hearing to be held on November 21, 1960, was a false affidavit * *." Thus plaintiff alleges a fraud upon the state district court in the contempt trial and further a fraud upon the federal court because a copy of said affidavit was filed in Houston.

██ In the determination of the immunity of Van Steenberg in Houston, Judge Van Pelt found from the plaintiff's complaint and a notice filed by plaintiff on November 2, 1960, that plaintiff had been present in earlier proceedings in the contempt trial. Thus jurisdiction of the court fully attached both as to subject matter and as to person and such jurisdiction would continue until all issues were finally litigated as long as the accused was given due notice of his denial of continuance and an opportunity to be present and defend. On page 631 of 202 F.Supp. 624, Judge Van Pelt refers to plaintiff's complaint which sets out the November 21, 1960, order of Judge Van Steenberg reciting that plaintiff had been "duly notified of this hearing." Judicial notice was taken of Snyder's affidavit as additional support of ample notice and opportunity to defend. Judge Van Pelt correctly justified such action, stating:

> "To hold that plaintiff has stated a claim against Judge Van Steenberg simply because it does not conclusively appear from plaintiff's complaint that he had notice of the November 21, 1960, hearing, when the fact that he did have notice plainly appears in documents filed in the case from which this action arose, would be to impose a heavy burden upon all those defendants and witnesses whose presence would otherwise be required at the hearing. Additionally, the court believes that under these circumstances, the rule that

in a federal habeas corpus action the court may judicially notice the transcript of trial proceedings and briefs which had been before the Nebraska Supreme Court is flexible enough to allow the same procedure in a case such as this." 202 F.Supp. 624, 633.

It should be emphasized that plaintiff did not allege lack of notice in his complaint in Houston, but merely alleged that he was not present and was not represented by counsel. In addition, plaintiff does not actually deny receiving notice in his pleadings in Meyer, but alleges the negative pregnant to the effect that "said notice was not delivered to Paul R. Rhodes at 7:45 A.M. on the 15th day of November, 1960." Plaintiff asserts that he was unable to defend against this fraud because at the time the *copy* of the alleged false affidavit was filed in the Houston case on January 24, 1962, plaintiff was confined incommunicado in the Nebraska State Prison. But this does not explain why he did not raise this issue in his pleadings in Houston since the *original* alleged false affidavit was filed in the contempt case on November 18, 1960. The complaint in Houston was filed on September 21, 1961, a month after he was free on bail and during that month he could have asserted the same issue on direct appeal had he been disposed to file his briefs. Thus we agree with Judge Delehant who found that "To the extent of its use in [the contempt trial], it was a matter for submission to Judge Van Pelt in [Houston] for it was initially used in the state court in November, 1960." 225 F.Supp. 80, 94.

Plaintiff alleges that the affidavits of the Warden and Deputy Warden, which pertained to the treatment of plaintiff and were previously referred to supra, were filed in Houston in furtherance of the conspiracy. Plaintiff moved to strike the affidavits on the general ground of "incompetent, irrelevant and immaterial and an undue encumbrance of the record" without alluding to any conspiratorial falsity. No direct ruling on said motion can be found in the record of Houston, however, a careful reading of the memo-

randum of Judge Van Pelt gives no indication that he relied upon such affidavits in reaching his conclusion. Plaintiff alleges that the false affidavits were referred to, along with other various falsehoods, by defendant Robert A. Nelson in oral argument and briefs before this court in Houston. As was already pointed out in a portion of the district court's decision quoted supra, this "savors too strongly of 'second guessing.'"

This court reiterated the applicable rule of res judicata in Engelhardt:

> "The law of res judicata as it relates to claim preclusion is firmly established. In a subsequent action by the same parties, a judgment on the merits in a former action based upon the same cause of action precludes relief on the grounds of res judicata. The judgment is conclusive, not only as to matters which were decided, but also as to all matters which might have been decided." 327 F.2d 30, 32.

■ Judge Delehant correctly determined that the causes of action here asserted are the same as asserted in Houston and that the added facts here pleaded do not make this a different cause of action. The basic wrong for which redress is asked is a conspiracy resulting in plaintiff's alleged wrongful conviction and imprisonment.

■ Plaintiff's reliance upon Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, as a basis for the inapplicability of the doctrine of finality of litigation in situations where life and liberty are at stake, is without merit. Sanders involved a 28 U.S.C.A. § 2255 motion. The court there held that the motion procedure is substantially equivalent to habeas corpus and that res judicata does not apply to such motions for the same traditional reasons that the doctrine does not apply to habeas corpus. No authorities are cited and no persuasive reason exists for applying the habeas corpus res judicata exception to a civil action such as this.

■ Plaintiff argues on appeal as he did below that res judicata cannot apply in these cases because the decision in Houston was not on the merits but merely on a motion to dismiss. The authorities cited by Judge Delehant at 225 F.Supp. 80, 105, adequately dispose of this argument and they establish that judgment entered on a motion to dismiss for failure to state a claim on which relief can be granted can support a defense of res judicata in a subsequent action. Judge Sanborn in Sylvan Beach, Inc., v. Koch, 8 Cir., 140 F.2d 852, 860, quoted from Freeman on Judgments, 5th Ed., Vol. 2, § 740 where it was stated that "A judgment on the pleadings is on the merits if it determines the merits of the controversy as distinguished from the merits of the pleadings." See Florasynth Laboratories v. Goldberg, 7 Cir., 191 F.2d 877; 2 Moore's Federal Practice ¶ 12.14 at 2267. The decisions on immunity of the various defendants in Houston were on the merits and thus preclude redetermination in these cases as to the immunity of these prior defendants: to wit, Richard M. Van Steenberg, Albert W. Crites, and Ted R. Fiedler, Nebraska District Court judges, Clarence A. H. Meyer, Attorney General of Nebraska, Cecil Brubaker, Assistant Attorney General, Rush Clarke, Special Assistant Attorney General, James L. Macken, County Attorney of Morrill County, George Turner, Clerk of the Nebraska Supreme Court, Virginia A. Schuetz, Clerk of the District Court of Morrill County, Norval Houston and Michael Linch, Sheriff and Deputy Sheriff of Morrill County, Carl Sanders and Leo Knudtson, Officers of the Nebraska Safety Patrol, Maurice Sigler and John Greenholtz, Warden and Deputy Warden of Nebraska State Penitentiary. All of the above named defendants were defendants in both Houston and Meyer; all of the above except Linch, Turner and Fiedler, were also named as defendants in Van Steenberg.

### III. STARE DECISIS.

The trial court held that all defendants in the two actions before us, including

those who were defendants in Houston and those who were not, were entitled to have their motions to dismiss sustained upon the basis of stare decisis, stating in support thereof:

"But after thorough study of the present file, and of the factual history to which it directs the court, supra, it has been, and is, considered unnecessary to premise the present ruling either upon the doctrine of *res judicata,* or upon its related rule of estoppel by judgment, and more appropriate to poise it upon the application of the principle of *stare decisis.* In pursuing that course, Rhodes v. Houston, supra, is accorded persuasive significance, not as a mandatorily controlling prior adjudication of the same case—or the essential features of it—but rather because, as a matter of legal reasoning, it is correct. In support, therefore, of the instant ruling, the court now cites Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, aff'd 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, and, without individual recollection, the many opinions cited in it, and Judge Van Pelt's penetrating analysis of them." 225 F.Supp. 80, 106; cf. 225 F.Supp. 113, 128.

The new defendants in Meyer are Dwain L. Jones, Assistant Attorney General of Nebraska, Robert A. Nelson, Special Assistant Attorney General of Nebraska, Gerald S. Vitamvas, Assistant Deputy Attorney General, George Lewis, the physician at the State Penitentiary,[2] and Peter E. Marchetti, H. B. Evenen and J. Arthur Curtiss, attorneys. Such attorneys and all defendant judges and prosecuting attorneys were made defendants by reason of their membership in the Nebraska State Bar Association.

Also named as defendants in Meyer are Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, and Robert C. Browers, Justices of the Supreme Court of Nebraska. They were defendants in Houston on the third cause of action demanding injunctive relief but not on the causes of action demanding monetary relief. We have not applied res judicata as to the Supreme Court Justices although it might well be proper to do so. In any event, it is abundantly clear that the Justices of the Supreme Court of Nebraska were acting within their jurisdiction in performing the acts here complained of and that the doctrine of judicial immunity requires a dismissal as to each of such Justices.

The new defendants in Van Steenberg are Robert A. Nelson, Special Assistant Attorney General of Nebraska, Gerald S. Vitamvas, Assistant Attorney General, Clarence S. Beck, Attorney General, Patrick E. Corrigan, Sheriff of Douglas County, and Jack Knudtson, Deputy Sheriff of Douglas County.[3]

A comparison of these new defendants with categories of immunity upheld in Houston reveals immediately that the only new classification is that of attorneys. Plaintiff asserted that their alleged actions "were under the color and authority of that office as Attorney at Law of the State of Nebraska, and the Nebraska State Bar Association, an official part of,

2. The complaint against Dr. Lewis is that he refused to furnish certified copies of prison hospital records and that he altered prison records. The complaint does not allege any wrongful medical treatment but charges the same type of wrongs which were asserted against the warden. See pp. 89 and 109 of 225 F. Supp.

3. All that is charged against the Sheriff and Deputy Sheriff of Douglas County is that on November 2, 1961, after mandate of the Supreme Court in the contempt conviction had issued, such officers aided Sheriff Norval Houston in arresting plaintiff in Omaha and kept him in jail at Omaha for safekeeping for several hours and then aided in his removal to the State Penitentiary for the service of his sentence. It is also alleged that while defendant was temporarily held in the Omaha jail he was denied counsel and a right to file petition for writ of habeas corpus.

organ of, and division of the State of Nebraska." The obvious lack of merit in this contention was competently pointed out in 225 F.Supp. 80, 93–94, 107. See Skolnick v. Martin, 7 Cir., 317 F.2d 855 (1963).

■ In regard to the categories of officialdom previously determined immune in Houston, proper judicial administration requires us to follow such determinations unless there has since been a significant change in the applicable law. Plaintiff relies upon Monroe v. Pape, 365 U.S. 167, 87 S.Ct. 473, 5 L.Ed.2d 492 (1961), for the contention that none of the defendants are immune under the Civil Rights Act and that the law set out in Houston is erroneous.

Judge Van Pelt and this court which affirmed were very much aware of the Monroe case, as is evidenced by the following quotation:

"The recent opinion of the United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) does not, as plaintiff suggests, overturn or modify the doctrine of judicial immunity in a federal civil rights action. An examination of all federal cases which have cited Monroe v. Pape reveals that it has not yet been considered for its effect, if any, upon the well established rule of judicial immunity. This court, therefore, relies upon its own reading of that case, and concludes that it has no effect upon the doctrine and is not here in point." Rhodes v. Houston, 202 F. Supp. 624, 629–630.

This court has also since made a survey of the cases citing Monroe to see what effect, if any, it may have on the traditional concepts of immunity. We find there is overwhelming support for the position that judicial immunity and its derivative quasi-judicial immunity have not been affected by Monroe. See Harvey v. Sadler, 9 Cir., 331 F.2d 387 (1964);

Agnew v. Moody, 9 Cir., 330 F.2d 868 (1964) (citing Houston with approval); Ray v. Huddeston, W.D.Ky., 212 F.Supp. 343, a'ffd, 6 Cir., 327 F.2d 61 (1964); Crawford v. Zeitler, 6 Cir., 326 F.2d 119 (1964); Duzynski v. Nosal, 7 Cir., 324 F.2d 924 (1963) (citing Houston with approval); Hurburt v. Graham, 6 Cir., 323 F.2d 723 (1963); Sires v. Cole, 9 Cir., 320 F.2d 877 (1963); Nesmith v. Alford, 5 Cir., 318 F.2d 110 (1963); Weller v. Dickson, 9 Cir., 314 F.2d 598 (1963); Kostal v. Stoner, 10 Cir., 292 F.2d 492 (1961); Basista v. Weir, W.D.Pa., 225 F.Supp. 619 (1964); Norton v. McShane, 5 Cir., 332 F.2d 855 (1964).

■ Therefore, in light of our findings that the factual situations are essentially the same in Meyer and Van Steenberg as in Houston, and that the law in regard to those facts is the same, we affirm the district court's application of stare decisis. The court properly determined all defendants to be immune from actions such as that alleged, and plaintiff's complaints were properly dismissed for failure to state a claim upon which relief could be granted.

## IV. OTHER ISSUES.

■ Plaintiff places considerable reliance upon his assertion that he recovered a substantial judgment against Edmondson, a penitentiary guard, in an action he brought upon the same basic cause of action in the United States District Court of Kansas. Plaintiff sets out the instructions in said case and the judgment obtained in his reply brief. Such items are, of course, not a part of the record here. The instructions disclose that default had been entered against Edmondson and that the only issue submitted to the jury was the amount of damages since the claims of the plaintiff were not denied by the defendant. Under such circumstances, we find nothing in said case which has any persuasive effect upon the issues we are here considering.[4] No opinion has been

4. The trial court makes a brief comment on the pendency of the Kansas case and the Rhodes-Edmondson relationship at p. 111 of 225 F.Supp.

filed in Edmondson. Needless to say, the Kansas case is not before us for review.

 Plaintiff in substance further contends that his civil rights were violated by reason of the fact that during both of his periods of incarceration he was assigned a prison number, given a prison orientation course, required to perform hard labor, subjected to prison rules (which are not shown to be unreasonable) and also confined in the "hole." The Ninth Circuit recently in our view properly rejected a similar contention in Draper v. Rhay, 9 Cir., 315 F.2d 193, 197, stating:

> "Because a defendant appeals a conviction, or questions it by a collateral attack, he is not entitled, pending a final determination, to his freedom; nor to enunciate to the warden the rules by which he is to be governed during his confinement.

> "There is no federally protected right of a state prisoner not to work while imprisoned after conviction, even though that conviction is being appealed.

> "Prison rules may require appellant to work but this is not the sort of involuntary servitude which violates Thirteenth Amendment rights. Butler v. Perry, 240 U.S. 328, 332, 36 S.Ct. 258, 259, 60 L.Ed. 672, where it was said:

> > "This amendment was adopted with reference to conditions existing since the foundation of our Government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."

 Plaintiff's claim that he was denied reasonable access to the courts while in prison is without merit. His pleadings show that he obtained an order fixing bail and that he obtained his release by filing bail on August 21, 1961. Ample time was available after his release on bail to permit the filing of a brief in his appeal from his contempt conviction or opportunity to apply for continuance if more time was needed. Moreover, Rhodes did not challenge in Houston the truth of the affidavits there filed by Sigler and Greenholtz to the effect that he was not denied the right to see counsel or visitors or to the use of the mails.

Other issues raised by the plaintiff have been given full consideration and found to be without merit.

The judgment appealed from in each of these cases is affirmed.