Henry **WILHELM** and Lawrence Frank, Appellants,

v.

Richard C. **TURNER**, Attorney General of Iowa; Douglas Carlson, Assistant Attorney General, Robert C. Blair, Director, Iowa Bureau of Criminal Investigation, Daniel Mayer and Terry C. Johnson, Agents, Appellees.

Henry **WILHELM** and Lawrence Frank, Appellees,

v.

Richard C. **TURNER**, Attorney General of Iowa, Douglas Carlson, Assistant Attorney General, Robert C. Blair, Director, Iowa Bureau of Criminal Investigation, Daniel Mayer and Terry C. Johnson, Agents, Appellants.

**Nos. 19792, 19796.**

United States Court of Appeals, Eighth Circuit.

June 8, 1970.

Rehearing En Banc Denied June 29, 1970.

Rehearing Denied June 30, 1970.

Clark L. Holmes, of Holmes & Ralph, Des Moines, Iowa, for Wilhelm and others.

Richard C. Turner, Atty. Gen., Des Moines, Iowa, for Turner and others; Larry Seckington, Asst. Atty. Gen., and Eugene Davis, Des Moines, Iowa, on the brief.

Before BLACKMUN, MEHAFFY and BRIGHT, Circuit Judges.

MEHAFFY, Circuit Judge.

Plaintiffs Henry Wilhelm and Lawrence Frank were the publishers of a newspaper, the "Pterodactyl," which was published at irregular intervals for primary distribution on the campus of Grinnell College and in the vicinity thereof. Frank was a junior at Grinnell and Wilhelm was a former student who dropped out of Grinnell about a year and a half prior to this action.

Plaintiffs brought this action under 42 U.S.C. § 1983, seeking an injunction to compel the return of the March 13, 1969 copy of the newspaper and other materials which they alleged had been illegally seized by the Attorney General and other defendants, and they also sought compensatory and exemplary damages. The Iowa Attorney General, Richard C. Turner, had had complaints about the publication and had examined several copies which he thought to be obscene. He made arrangements with the printer and his attorney for the next copy which was furnished to the printer to be delivered to his agents. He obtained this copy on the assumption that it was obscene and that his action and the action of those acting under his direction, including the Director of the Iowa Bureau of Criminal Investigation and agents of the Bureau, who were alerted by the attorney for the printer as to when the copy would be available, was pursuant to the performance of their duties under the Iowa statutes.[1]

---

1. See §§ 725.4, 725.5 and 725.6, Code of Iowa, prohibiting the printing, distribution or circulation of obscene books, pamphlets, papers, pictures or other obscene matter. See also § 748.6, Code of Iowa, authorizing the attorney general to call to his aid in the enforcement of the law any peace officer, and § 80.22 author-

Defendants included Richard C. Turner, the Attorney General of Iowa; Douglas Carlson, one of his assistants; Robert C. Blair, Director of the Iowa Bureau of Criminal Investigation; and Daniel Mayer and Terry C. Johnson, agents of IBCI.

The complaint was filed on March 17, 1969 and on the following day defendants filed a motion to dismiss supported by affidavits. On March 19, 1969, the court set the date for a hearing on the preliminary injunction for March 25, 1969. On March 21, defendants filed a brief and affidavits in support of their motion to dismiss and supplemental motion to dismiss. On the hearing date, March 25, The Honorable Roy L. Stephenson permitted evidence to be taken orally by both parties and he treated defendants' motion as one for summary judgment. Thereafter the court filed its memorandum opinion and order which required a return of the materials to plaintiffs but refused to order a preliminary injunction on the ground that it was unnecessary and dismissed plaintiffs' claim for compensatory and exemplary damages. Judge Stephenson's opinion is reported as Wilhelm v. Turner, 298 F.Supp. 1335 (S.D. Iowa 1969). We affirm the judgment of the district court although our reasons differ in some respects from the reasons advanced in the memorandum opinion.

The Pterodactyl had been published intermittently for about a year, but the record is not clear as to exactly how many issues had been printed. The Attorney General had had a complaint from a county attorney relative to one of the issues, and he had read some previous issues and was convinced that the material was obscene. His office made arrangements with the printer and the lat-

ter's attorney to alert him when the next issue would be published and to deliver the copy to the state agents. This was done which promptly resulted in a demand for the return of the copy, and upon refusal this action ensued.

*The Unlawful Seizure.*

Judge Stephenson held that the materials were seized by the agents of the Attorney General at his direction without a prior judicial determination as to their obscenity and that by reason thereof the plaintiffs were entitled to a prompt return of the materials. The view of the district court was based primarily on A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), in which case the Supreme Court ruled that an adversary determination of obscenity is a necessary prerequisite to seizure. In the *Kansas* case, there was a warrant issued authorizing the sheriff to seize all copies of certain books but the Supreme Court there said (378 U.S. at 210, 84 S. Ct. at 1726):

> "A seizure of all copies of the named titles is indeed more repressive than an injunction preventing further sale of the books. State regulation of obscenity must 'conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.' "

The Court further said at 213, 84 S.Ct. at 1727:

> "For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books."[2]

---

izing the commissioner of public safety to assign as many as six officers to the department of justice when requisitioned by the attorney general, and providing that "when so assigned such officers shall be under the exclusive direction and control of the attorney general."

2. The Supreme Court cited in support Bantam Books Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Marcus v. Search Warrants of Property, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1127 (1961); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

■ We have no difficulty in agreeing with Judge Stephenson in his holding that the warrantless but voluntary arrangement for procuring the copy constituted a seizure and in following the rule of *Kansas* requiring an adversary determination of obscenity as a necessary prerequisite thereto. The order requiring prompt return of the materials to plaintiffs was proper under the circumstances.

*Judicial Immunity.*

The district court recognized that the doctrine of judicial immunity has long been applied to prosecuting attorneys and those associated with them in the discharge of their duties on the basis that they are quasi-judicial officers and should be afforded the same immunity as judges in order that they may act freely and fearlessly in the discharge of their important official functions, and further recognized that the doctrine of immunity of quasi-judicial officers such as prosecuting attorneys has not been modified by the Civil Rights Act. The primary position of the plaintiffs is that this general rule is not applicable here because the Attorney General acted prior to having seen the material seized and therefore was not engaged in a quasi-judicial function but was engaged in activities which were clearly investigative. The court found that the Attorney General and his staff must of necessity conduct investigations in carrying out their official duties, that they were acting within their jurisdiction in conducting the investigation in the case at hand, and that it is only when the Attorney General or his staff act clearly outside their jurisdiction that they lose their immunity. In accordance with these findings, the court dismissed the suit for damages against the Attorney General and his assistant. With regard to the Director of the State Bureau of Criminal Investigation and the agents of the Bureau, the court found that they were performing ministerial functions at the specific direction of the Attorney General and were therefore immune from suit for civil damages.

In their argument in opposition to the court's finding of immunity for the defendants, the plaintiffs specifically raise three questions. First, they suggest that the doctrine is not applicable in actions brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Second, assuming the applicability of the doctrine to the Civil Rights Act, they question the extent thereof in creating immunity for prosecutors. And finally, they question whether the action by the prosecutor (Attorney General) in the instant case falls within the doctrine.

■ Plaintiffs suggest that the plain language of § 1983 makes the statute applicable to "every person." [3] We think that Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), affords a complete answer to plaintiffs' first argument. *Pierson* involved the liability of local police officers and judges under § 1983 and the Court, speaking through Mr. Chief Justice Warren, held that the common-law doctrine of judicial immunity was not abolished by § 1983. At pages 553–555, 87 S.Ct. at pages 1217–1218, the Court said:

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13

---

3. Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (Citing case.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

"We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

With regard to immunity for police officers, the Court said in the *Pierson*

case, *supra* (386 U.S. at 555, 557, 87 S. Ct. at 1218):

"The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. (Citations omitted.) A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

\* \* \* \* \* \*

"We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983."

The Court also clarified its holding in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), stating that the *Monroe* case presented no question of immunity, that none was decided, and that the Court "in no way intimated that the defense of good faith and probable cause was foreclosed by the statute." (386 U.S. at 556, 87 S.Ct. at 1219.) To the same effect, see Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964), where judges, prosecuting attorneys, law enforcement officers and prison officials were held to be immune from suit for damages under the Civil Rights Act.[4]

---

4. We said in Rhodes v. Meyer, 334 F.2d 709, 718 (8th Cir. 1964):
"This court has also since made a survey of the cases citing *Monroe* to see what effect, if any, it may have on the traditional concepts of immunity. We find there is overwhelming support for the

position that judicial immunity and its derivative quasi-judicial immunity have not been affected by *Monroe*. (Citations omitted.)
"Therefore, in light of our findings that the factual situations are essentially the same in *Meyer* [Rhodes v. Meyer, D.C.,

Next, it is argued that the doctrine of quasi-judicial immunity is an undue extension of the doctrine of judicial immunity and should not be utilized to include quasi-judicial officers such as public prosecutors as such a rule would be illogic and an unjustifiable extension of the doctrine.

Defendant Richard C. Turner, Attorney General of Iowa, is a part of the judicial department under Article V, Judicial Department, § 12, Constitution of Iowa. Additionally, the Attorney General was performing acts pursuant to his statutory duties.[5] It has many times been held that the doctrine of immunity of quasi-judicial officers such as prosecuting attorneys has not been modified by § 1983. Fanale v. Sheehy, 385 F.2d 866 (2nd Cir. 1967); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Rhodes v. Meyer, supra; Hurlburt v. Graham, 323 F.2d 723 (6th Cir. 1963); Phillips v. Nash, 311 F.2d 513 (7th Cir. 1962); Rhodes v. Houston, 309 F.2d 959 (8th Cir. 1962); Wise v. City of Chicago, 308 F.2d 364 (7th Cir. 1962); Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961).

■ Finally, it is suggested that the reasonable rule to follow is that found in Dodd v. Spokane County, Washington, 393 F.2d 330 (9th Cir. 1968). Plaintiffs' arguments are premised on the assertion that the Attorney General's actions were in no way connected with his judicial duties and argue that this is true whether the court adopts the view in Bauers v. Heisel, supra, or Dodd, supra. In Bauers, the court said (361 F. 2d at 589):

"* * * [W]e believe that both reason and precedent require that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary." [6]

In Dodd, the court held that if a prosecuting attorney was performing acts committed pursuant to his investigatory duties, then his role is substantially the same as that of a policeman or county sheriff in which case he has the same defense of good faith and probable cause. The court said in Dodd, supra, 393 F.2d at 335:

"The defense of good faith and probable cause is available to defendant county sheriff and deputy sheriffs. (Citing case.) If they are not able to establish that defense they have no other immunity from suit under the Civil Rights Act, though of course plaintiff may not be able to prove that they engaged in the alleged acts.

* * * * * *

"Defendants prosecuting attorney and deputy prosecuting attorney are im-

---

225 F.Supp. 80] and *Van Steenberg* [Rhodes v. Van Steenberg, D.C., 225 F. Supp. 80] as in *Houston* [Rhodes v. Houston, D.C., 202 F.Supp. 624], and that the law in regard to those facts is the same, we affirm the district court's application of stare decisis. The court properly determined all defendants to be immune from actions such as that alleged, and plaintiff's complaints were properly dismissed for failure to state a claim upon which relief could be granted."

5. See § 13.2, Code of Iowa, and n.1 hereof.

6. The opinion in Bauers v. Heisel, 361 F.2d 581, 589–590 (3rd Cir. 1966), states: "In deciding the question of whether a prosecuting attorney is liable for acts done in his official capacity, we must decide whether his duties are sufficiently judicial as to cloak him with the same immunity afforded judges or are so closely related to those duties of law enforcement officials as to amerce him with potential civil liability for his imprudent actions. * * * Analogy could support either conclusion, but we believe that both reason and precedent require that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary. The reasons are clear: his primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent * * *; his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest. In this respect, it is imperative that he enjoy the same freedom and independence of action as that which is accorded members of the bench. This reasoning is nearly as well established in Anglo-American law as judicial immunity itself. * * * Prosecuting attorneys who have been sued under the Civil Rights Act, R.S. § 1979, have likewise been held immune. * * *"

mune from suit under the Civil Rights Act if the acts complained of were performed in connection with their quasi-judicial duties. On the other hand, if such acts were committed pursuant to their investigatory duties, then their role is substantially the same as that of policeman or county sheriffs, in which case they have the same defense as indicated above for the defendant county sheriff and deputy sheriffs. See Robichaud v. Ronan, 9 Cir., 351 F.2d 533, 536–538."

Even though we should depart from the rationale of the district court and adhere to that suggested by plaintiffs, we would still come to the conclusion that the court was correct in dismissing plaintiffs' complaint with respect to damages as the record here indisputably reflects that the Attorney General and those under him were acting in good faith and had probable cause for their actions. The record is not only devoid of any evidence of lack of good faith or probable cause, but there is specific evidence both in the affidavits attached to defendants' motion to dismiss and in the testimony of the Attorney General who was called by plaintiffs as an adverse witness that (1) the Attorney General had never seen the plaintiffs prior to the trial, (2) he had no malice towards them, (3) he considered it his duty to enforce the obscenity laws of Iowa, (4) he had probable cause for his actions, and (5) his actions and the things which he directed others to do were done in good faith and pursuant to his official duties.

The trial court treated defendants' motion to dismiss as a motion for summary judgment and permitted testimony to be adduced at the conclusion of which the court inquired of the parties if they desired to submit other evidence and none was offered. There was not a scintilla of evidence offered by plaintiffs to refute the affidavits and evidence submitted in support of the motion to dismiss that would have justified the court in concluding other than that the Attorney General and those acting pursuant to his directions acted with probable cause and in good faith. *Cf.* Norton v. McShane, 332 F.2d 855 (5th Cir. 1964).[7] With the record in this state, we need not determine whether our previous holdings should be modified to comport with the Ninth Circuit approach inasmuch as under any approach the law is settled that when the Attorney General, his assistants and those acting under him, acted with probable cause and in good faith they are immune whether their actions constituted an investigative procedure or not.

The judgment of the district court is affirmed.

7. In Norton v. McShane, 332 F.2d 855, 861 (5th Cir. 1964), the court said: "In the face of the Attorney General's affidavit, the plaintiffs cannot rest upon the mere allegations of their complaints unsupported by sworn testimony. It became incumbent on the plaintiffs, by affidavits or otherwise as provided in Rule 56, supra, to set forth specific facts showing that there was a genuine issue for trial as to whether the defendants were acting within the line and scope of their official duties. See Cunningham v. Securities Investment Company, 5 Cir. 1960, 278 F.2d 600, 602, 603. The plaintiffs introduced no evidence whatever, and thus failed completely to meet the burden resting upon them."