358 F.Supp. 398 (1973)
Donald P. SMALLWOOD, pro se, Plaintiff,
v.
UNITED STATES of America et al., Defendants.
Civ. No. 72 C 635(A).
United States District Court, E. D. Missouri, E. D.
April 23, 1973.
*399 *400 Donald Smallwood, pro se.
Paul Gonson, S. E. C., Harlington Wood, Jr., Asst. Atty. Gen., Michael M. Hunter, Civil Div., Dept. of Justice, Washington, D. C., for defendants.

OPINION AND ORDER
POOS, District Judge.
This matter came before the Court on the Complaint of the Plaintiff alleging that the Defendants have conspired to deprive him of "liberty and property" in violation of the constitutional protection afforded these civil rights. Plaintiff alleges jurisdiction under 28 U.S.C., Sections 1331, 1343, 1346 and 1361; 18 U. S.C., Section 3231; and 42 U.S.C., Sections 1983 and 1988. In terms of relief, Plaintiff seeks a complete investigation into all court actions in Civil Action No. 69-C-57(2), Criminal Action No. 69-Cr-82(1), and Bankruptcy No. 69-B-569; a permanent restraining order enjoining all defendants from getting rid of all or any records, writings and receipts in the above named actions; to stop all proceedings in the Bankruptcy Action No. 69-B-569; an order requiring the Receiver, Trustee, Attorney for the Trustee, and the Bankruptcy Referee to account for all monies received and spent in Bankruptcy Action No. 69-B-569 and Civil Action No. 69-C-57(2); the criminal prosecution of the defendants; monetary damages in the amount of Twenty-five Million Dollars ($25,000,000); release from prison, and an order enjoining defendants from conspiring against Plaintiff by engaging in acts violative of the many and diverse statutory provisions alleged in the Complaint.
Plaintiff is presently incarcerated at the United States Penitentiary, Terre Haute, Indiana, serving a 35-year sentence imposed following his 1969 conviction by a jury on multiple counts of securities fraud, mail fraud, and mailing an unregistered security. This conviction was affirmed by the Eighth Circuit Court of Appeals in United States v. Smallwood, 443 F.2d 535 (8 Cir. 1971), and certiorari was later denied by the Supreme Court, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971). Plaintiff's motion pursuant to 28 U.S.C., Section 2255 to vacate judgment and sentence was duly considered and denied. Smallwood v. United States, U.S.D.C., E.D. Missouri, Civil Action No. 72-C-333(a), Memorandum and Order filed September 19, 1972. Plaintiff's allegations herein relate to the criminal proceeding, (originally numbered 69-Cr-82(1), a civil action 69-C-57(2) brought by the Securities and Exchange Commission against Plaintiff, the corporation of which Plaintiff was the primary executive officer (Diversified Brokers Company, Inc.), and two other individuals, wherein plaintiff consented to appointment of a receiver for the company and a bankruptcy action in the matter of Diversified Brokers Company, Inc. (69-B-569).
All defendants have moved to dismiss the Complaint and for Summary Judgment. The Security and Exchange Commission, Harry O. Moline and John F. Kern (hereinafter referred to as the "S. E.C. defendants"), move to dismiss on *401 the grounds that they are immune from suit for acts performed in the exercise of their official responsibilities. The remaining defendants (hereinafter referred to solely as "defendants"), base their Motion to Dismiss on the grounds of judicial immunity. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, these Motions shall be treated as a Motion for Summary Judgment.

I.
In one way or another each defendant was involved in the above mentioned court proceedings involving the Plaintiff. The following facts have been summarized from the court records in the several actions, and from the affidavits submitted.
On February 17, 1969, defendant Securities and Exchange Commission, by its attorneys, defendants John F. Kern and Harry O. Moline, Jr., filed a complaint against Diversified Brokers Company, Inc., and Plaintiff, charging violations of the Securities Act of 1933 (Civil Action No. 69-C-57(2). Ten days later, on February 27, 1969, Plaintiff and two associates consented in writing to a final judgment enjoining Diversified Brokers from violating the Securities Act, and appointing a Receiver to take charge of corporate property and assets. In the normal case assignment procedures of the District Court for the Eastern District of Missouri, this action was assigned to the docket of defendant Judge James H. Meredith. Inasmuch as Judge Meredith was absent from the District at the time the Complaint was filed, and also when the hearing on Motion for Preliminary Injunction was held, defendant Judge John K. Regan sat in his place during the initial receivership proceedings, signing the Final Judgment, whereby defendant Stuart Symington, Jr., was appointed Receiver and "ordered to enter into bond in the sum of $50,000 with surety to be approved by the Court."
Pursuant to the February 27th judgment, defendant Symington took possession of the corporate offices and their contents, and also obtained numerous files and records from the offices of defendants Harold L. Satz and Theodore D. Ponfil, then attorneys for Diversified Brokers. On March 19, 1969 the Receiver (defendant Symington) was served with subpoenas to appear before the Grand Jury and to take with him "any and all records referring or relating to Diversified Brokers Company, Inc."
Thereafter, the Grand Jury handed down a multiple count indictment pursuant to which plaintiff was convicted with two associates in Criminal Action No. 69-Cr-82(1) in a jury trial presided over by defendant Senior Judge Roy W. Harper. In addition, Senior Judge Harper held several hearings ancillary to the criminal trial, including imposition of the sentence which plaintiff is currently serving. The Assistant United States Attorney responsible for trying the criminal action was defendant Jim J. Shoemake, defendant Daniel Bartlett, Jr., appointed United States Attorney on May 6, 1969, after commencement of the receivership action, and also following return of the indictment against plaintiff, assumed general responsibility for these cases in his capacity as United States Attorney, and also participated in trying the criminal action. Under defendant Bartlett's supervision, the office of the United States Attorney also represented the Government before the Eighth Circuit Court of Appeals upon plaintiff's appeal thereto from the jury conviction and sentence imposition in 69-Cr-82(1).
On March 28, 1969, a creditors' petition in bankruptcy was filed against Diversified Brokers Company, Inc., (Cause No. 69-B-569), and on April 22, 1969 said Corporation, of which plaintiff was President, was adjudicated a bankrupt by the United States District Court for the Eastern District of Missouri.
Defendant Robert E. Brauer, Referee in Bankruptcy, was assigned to conduct the proceedings in accordance with the bankruptcy laws of the United States. At the first meeting of creditors on *402 June 6, 1969, defendant John A. Nooney was nominated and elected Trustee of the Bankrupt. On June 19, 1969 defendant Nooney's bond as Trustee was filed and approved, defendant Nooney thereafter being the duly qualified Trustee. The Receivership estate was terminated and closed by court order of June 25, 1970, with all assets, property and claims of Diversified Brokers being turned over to defendant Nooney as Trustee in Bankruptcy, and defendant Symington was thereupon discharged as Receiver having fully performed all duties required of him as Receiver of Diversified Brokers. On June 26, 1969, on petition of the Trustee, the Trustee was authorized to and did appoint defendant Symington as attorney for the Trustee, in which capacity alone did defendant Symington thereafter serve the estate of the bankrupt Diversified Brokers. On occasion, during his absence from St. Louis, defendant Symington has authorized two of his associates in legal practice, defendants Thomas J. Guilfoil and Sanford S. Neuman, to act as his agents in matters relating to his official responsibilities as Court-appointed Receiver, and thereafter as appointed Attorney for the Trustee in Bankruptcy.

II.
Defendants Judge Roy W. Harper, Judge James H. Meredith and Judge John K. Regan are sued in their official capacity as Judges of the United States District Court for the Eastern District of Missouri. The conduct of the Judges complained of by plaintiff herein is confined by plaintiff's allegations to their official conduct with respect to the actions in which they had judicial responsibility.
The principle is well established that judicial officers are immune from suits for money damages for acts performed in the discharge of their official duties. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1971); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Schwartz v. Weinstein, 459 F.2d 882 (8th Cir. 1972); Jacobson v. Shaefer, 441 F.2d 127 (7th Cir. 1971); Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 919, 28 L. Ed.2d 230 (1971); O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965), cert. denied, 384 U.S. 926, 86 S.Ct. 1444, 16 L. Ed.2d 530 (1966); Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964); Meredith v. Van Oosterhout, 286 F.2d 216 (8th Cir. 1960), cert. denied, 365 U.S. 835, 81 S. Ct. 749, 5 L.Ed.2d 745 (1961).
One of the first major cases dealing with judicial immunity from suit is Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871). In that case the plaintiff, an attorney, had sued to recover damages from the defendant, a Justice of the Supreme Court of the District of Columbia, who had ordered plaintiff's name stricken from the roll of attorneys as a result of certain remarks the plaintiff had made to him during a murder trial. The Court held that the Judge was immune from suit as long as he had jurisdiction of the subject matter, no matter how irregular his actions might have been, nor how malicious or corrupt his motives might be. The Court stated as follows, at 80 U.S. 347:
"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the Judge, would be inconsistent with the possession of his freedom, and would destroy that independence without which no judiciary can be either respectable or useful."
But the Bradley case, although one of the earliest cases in which the Court approved of judicial immunity, was a common law action, not one arising under any of the civil rights acts.
However, in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 *403 (1967), plaintiffs sued a State Court Judge for damages under 42 U.S.C., Section 1983 for his adjudging certain civil rights demonstrators guilty when their cases came before this Court. In discussing the judicial immunity issue the Court stated:
"This immunity applies even when the Judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra, [80 U.S.] 349 note at 350. It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making, but to intimidation. 386 U.S. 554, 87 S.Ct. 1218."
The Eighth Circuit Court of Appeals firmly established the applicability of the doctrine of judicial immunity in Brictson v. Woodrough, 164 F.2d 107, 109 (8th Cir. 1947). In that case plaintiff sued thirty-nine defendants, including a number of judges, for damages for alleged wrongful acts alleged to have been done pursuant to and in furtherance of a conspiracy alleged to have been entered into by the several defendants. The Court therein stated as follows:
"Resting on considerations of public policy to the end that the administration of justice may be independent and based on the free and unbiased convictions of the judge, uninfluenced by apprehension of personal consequences, it is a general rule that, where a judge has jurisdiction over the subject matter and the person, he is not liable civilly for acts done in the exercise of his judicial function, even though he acts erroneously, illegally, or irregularly, or even corruptly." 164 F.2d 109.
The doctrine of judicial immunity also applies to proceedings in which injunctive or other equitable relief is sought as well as to suits for money damages. The reasons for the judicial immunity rule apply regardless of the nature of the relief sought. Tate v. Arnold, 223 F.2d 782 (8th Cir. 1955); Mackay v. Nesbett, 285 F.Supp. 498 (D. Alaska, 1968); Rhodes v. Houston, 202 F.Supp. 624 (D.Neb.1962), affirmed, 309 F.2d 959 (8th Cir. 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 2d 719 (1963).
Inasmuch as plaintiff's complaint alleges relief under the Civil Rights Act, 42 U.S.C., Section 1983, it should be noted that the Civil Rights Act creates no exception to judicial immunity. Pierson v. Ray, supra. There is nothing in the legislative history of the Civil Rights Act which abrogates or in any way impairs the doctrine of judicial immunity. Byrne v. Kysar, 347 F. 2d 734 (7th Cir. 1965), cert. denied, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668 (1966), rehearing denied, 384 U.S. 914, 994, 86 S.Ct. 1891, 16 L.Ed.2d 1011 (1966). Judges and Justices acting in their judicial capacities consistently have been held to be immune from suit under the Civil Rights Act. Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965); Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964); Hurlburt v. Graham, 323 F.2d 723 (6th Cir. 1963); Jennings v. Nester, 217 F.2d 153 (7th Cir. 1954); Drusky v. Judges of the Supreme Court, 324 F.Supp. 332 (W.D.Pa.1971); Carpenter v. Oldham, 314 F.Supp. 1350 (W. D.Mo.1970); Hagan v. State of California, 265 F.Supp. 174 (C.D.Cal.1967).
Inasmuch as the affidavits of Senior Judge Roy W. Harper, Chief Judge James H. Meredith and Judge *404 John K. Regan demonstrate that they have had no contact with plaintiff in any manner other than in their official capacity as United States District Judge, the Court holds that these defendants are immune from suit.
Officials of the judiciary are also entitled to the same immunity as judges. In particular, the clerks of courts have been held not subject to civil damage suits by reason of the doctrine of judicial immunity. Davis v. McAteer, 431 F.2d 81 (8th Cir. 1970); Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964). Accordingly, referees in bankruptcy and trustees in bankruptcy should not be subject to civil damage suits under the doctrine of judicial immunity, for they are officers of the bankruptcy court. 11 U.S.C., Secs. 61, 62; In re Swartz, 130 F.2d 229 (7th Cir. 1942); Fish v. East, 114 F.2d 177 (10th Cir. 1940).
Since defendant Robert E. Brauer, Referee in Bankruptcy for the United States District Court, Eastern District of Missouri, is a judicial officer, and since Defendant, John A. Nooney, was elected, duly appointed and qualified as Trustee in Bankruptcy in Cause 69-B-569, he must also be treated as a judicial officer. Since neither Defendant had any contact with Plaintiff in any manner other than in their official capacity, it necessarily follows that these defendants are also immune from suit.
A Receiver can be appointed by Federal Courts to conserve assets and property of a corporation if it is determined by the Court that such appointment is in the public interest, especially in effectuating the purposes of the federal securities laws, Securities and Exchange Commission v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2nd Cir. 1972); Securities and Exchange Commission v. Bartlett, 422 F.2d 475 (8th Cir. 1970); Securities and Exchange Commission v. S & P National Corporation, 360 F.2d 741 (2nd Cir. 1966); Securities and Exchange Commission v. Keller Corporation, 323 F.2d 397 (7th Cir. 1963). The court appointed receiver is a quasi-judicial officer within the protection afforded by the doctrine of judicial immunity. Bradford Audio Corporation v. Pious, 392 F.2d 67 (2nd Cir. 1968). As a receiver duly appointed by the Court, it is evident that defendant Symington acted only pursuant to court direction and thus is protected by the judicial immunity doctrine and immune from suit.
The doctrine of judicial immunity also applies to defendant Symington as court-approved attorney for the Trustee in Bankruptcy John A. Nooney.
As the affidavits of defendants Thomas J. Guilfoil and Sanford S. Neuman indicate, the only contact which they have had with plaintiff has been by virtue of their acts as agents for and in behalf of defendant Symington in his official capacity as court-appointed receiver or as court-approved attorney for the trustee in bankruptcy. By virtue of the immunity conferred upon the principal, defendant Symington, in his quasi-judicial capacities, the same judicial immunity from suit for official acts extends to defendants Guilfoil and Neuman, inasmuch as they have had no contact with Plaintiff in any manner other than in an official capacity.
Defendant Daniel Bartlett, Jr., and Defendant Jim J. Shoemake are sued in their respective official capacities as United States Attorney and Assistant United States Attorney. In Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970), the Court dealt with the judicial immunity doctrine in relation to prosecutors. Plaintiffs published a newspaper which was seized by the Attorney General of the State of Iowa. Plaintiffs brought an action under 42 U.S.C., Section 1983, against the Attorney General and others seeking damages and an injunction to compel the return of the newspapers and other materials seized which they alleged had been illegally seized. The District Court ordered the return of the materials to Plaintiffs, but refused to *405 order a preliminary injunction and dismissed Plaintiff's claim for compensatory damages.
The Court of Appeals affirmed the District Court and discussed the doctrine of judicial immunity as applied to prosecuting attorneys stating:
"The district court recognized that the doctrine of judicial immunity has long been applied to prosecuting attorneys and those associated with them in the discharge of their duties on the basis that they are quasi-judicial officers and should be afforded the same immunity as judges in order that they may act freely and fearlessly in the discharge of their important official functions, and further recognized that the doctrine of immunity of quasi-judicial officers such as prosecuting attorneys has not been modified by the Civil Rights Act. . . . The Court found that the Attorney General and his staff must of necessity conduct investigations in carrying out their official duties; that they were acting within their jurisdiction in conducting the investigation in the case at hand, and that it is only when the Attorney General or his staff act clearly outside their jurisdiction that they lose their immunity." 431 F.2d 180.
The Court also pointed out that the doctrine of immunity of quasi-judicial officers, such as prosecuting attorneys, has not been modified by 42 U.S.C., Section 1983. Fanale v. Sheehy, 385 F.2d 866 (2nd Cir. 1967); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Hurlburt v. Graham, 323 F.2d 723 (6th Cir. 1963); Phillips v. Nash, 311 F.2d 513 (7th Cir. 1962); Rhodes v. Houston, 309 F.2d 959 (8th Cir. 1962); Wise v. City of Chicago, 308 F.2d 364 (7th Cir. 1962).
The affidavits of Defendants Bartlett and Shoemake demonstrate that each Defendant has acted wholly within the requirements of their official duties and that each Defendant has had no contact with Plaintiff in any manner other than in their official capacity. It is clear that the doctrine of judicial immunity applies to Defendants Bartlett and Shoemake in their quasi-judicial official capacities as United States Attorney and Assistant United States Attorney.
Plaintiff has alleged that Defendants Harold L. Satz and Theodore D. Ponfil violated his civil rights by handing over certain records in their possession as attorneys for Diversified Brokers upon demand by the Receiver. The Receiver (Defendant Symington) was directed by order of the Court to collect and take charge of any and all assets and property of Diversified Brokers, Inc. Defendants Satz and Ponfil had no legal alternative but to turn over to the Receiver the property and corporate files of Diversified Brokers, Inc., which they then held. In addition, Defendant Symington had no legal alternative but to take charge of any and all property of Diversified Brokers, Inc., as ordered by the Court. Any refusal to satisfy the Court's order by any of these Defendants would have been a blatant violation of said order and may have constituted a criminal violation of authority vested by the Court. Clearly no cause of action exists against Defendants Harold L. Satz and Theodore D. Ponfil. The affidavits of Defendants Satz and Ponfil clearly demonstrate that they were acting pursuant to the Court order of February 27, 1969.
Plaintiff has also named the United States as a party Defendant requesting money damages from the United States. It is well established that the United States may not be sued without its consent. Ickes, Secretary of the Interior v. Fox, et al., 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937); Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 756, 97 L.Ed. 1427 (1952). Plaintiff has cited no statutory authority for bringing this action against the United States. In the absence of such authority, this action must be dismissed as it pertains to the United States.
*406 The basis of Plaintiff's Complaint lies with the case of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339 (1972). In Bivens the Plaintiff sued for damages based on the unconstitutional search and seizure of Plaintiff's premises. Plaintiff alleged that agents of the Federal Bureau of Narcotics entered Plaintiff's apartment and arrested him for alleged narcotics violations. The agents manacled Plaintiff in front of his wife and children and threatened to arrest the entire family. The apartment was searched and Plaintiff was taken to the Court House, interrogated, booked, and subjected to a visual strip search. Plaintiff alleged that the arrest and search were made without a warrant and that unreasonable force was employed in making the arrest. The District Court dismissed the Complaint holding that: (1) there is no right of action under the Fourth Amendment; and (2) even if there is such a right of action, Defendants, being federal agents, are immune from suit. 276 F.Supp. 12 (1967). The Court of Appeals for the Second Circuit affirmed on the basis of the first ground not mentioning the immunity question. 409 F.2d 718 (2nd Cir. 1969). The Supreme Court reversed, holding that a valid claim for relief had been stated, and remanded the case to the Second Circuit Court of Appeals for a determination of the immunity question. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
In the remand case, the Court of Appeals held that as a principle of federal law, Agents of the Federal Bureau of Narcotics, and other federal police officers such as Agents of the F. B. I. performing similar functions, while in the act of pursuing alleged violators of the narcotics laws or other criminal statutes, have no immunity to protect them from damage suits charging violations of constitutional rights. The Court further held however that it is a valid defense to such charges to allege and prove that the federal agent or other federal police officer acted in the matter complained of in good faith, and with a reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made, and the search was conducted.
The Court stated that certain officers of the Federal Government, acting in their official capacities, are absolutely immune from lawsuits, citing Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L. Ed. 646 (1871) for this proposition.
The Court also cited Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) wherein the Supreme Court held that an Acting Director of the Office of Rent Stabilization could not be sued for issuing an allegedly libelous press release. The opinion focused on the nature of the Defendant, stating that one must look to the duties performed by the officer. The Supreme Court held that an official is immune if he performs discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority. Once an official is found to be exercising this kind of discretion, the act complained of must be "within the outer perimeter of the official's line of duty" before the official will be granted immunity.
The Bivens Court found that the agents were acting "within the outer perimeter of their line of duty", but rejected the claim of immunity because the Agents were found not to be engaged in the performance of the sort of "discretionary" acts that require the protection of immunity. However, the Court went on to hold that it is a defense to allege and prove good faith and reasonable belief that arrest and search were lawful and reasonable.
The Bivens case is not inconsistent with the position of this Court with regard to judicial immunity afforded defendants Senior Judge Roy W. Harper, Chief Judge James H. Meredith, Judge John K. Regan, United States Attorney Daniel Bartlett, Jr., Assistant United States Attorney James J. Shoemake, *407 Referee R. E. Brauer, Trustee and Receiver Stuart Symington, Jr., John A. Nooney, and Thomas J. Guilfoil. Even if the Bivens case were to apply to these defendants and this Court holds that it does not, all defendants would be immune from suit inasmuch as all of the above defendants were acting "within the outer perimeter of their official line of duty and were engaged in the performance of the sort of "discretionary" acts that require the protection of immunity.
As to the Defendant Securities and Exchange Commission, it is apparent that no cause of action exists against this Defendant. Congress has nowhere declared that the Securities Exchange Commission may be sued in its own name apart from having its orders reviewed in courts of appeals. This case is thus controlled by Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952), where in affirming the dismissal of a complaint against the Civil Service Commission, the Supreme Court stated:
". . . When Congress authorizes one of its agencies to be sued eo nomine, it does so in explicit language or impliedly because the agency is the offspring of such a suable entity. See Keifer & Keifer v. R. F. C., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784."
The Securities and Exchange Commission, like the Civil Service Commission, "cannot be sued eo nomine." Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir.), certiorari denied, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149 (1965), cited approvingly in National Labor Relations Board v. Nash-Finch Co., 404 U.S. 138, 146 n. 4, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); M. G. Davis & Co. v. Securities and Exchange Commission, 252 F.Supp. 402, 403 (S.D.N.Y., 1966); Progressive Securities Inc. v. Young, 267 F.Supp. 20, 21 (S.D.W.Va., 1967).
As to Defendants Harry O. Moline and John Kern, the rule is well established that federal employees are absolutely privileged from private damage suits for acts performed in the course of their Government employment. This privilege has been sustained by the Supreme Court in Barr v. Matteo, supra, and Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), and has been upheld by the Eighth Circuit Court of Appeals. Gross v. Sederstrom, 429 F.2d 96 (8th Cir. 1970).
In Barr v. Matteo, supra, a civil defamation suit based upon a press release issued by the Director of the Office of Rent Stabilization, the Court held that the purpose of the absolute privilege was to leave government officials ". . . free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those dutiessuits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. at 571, 79 S.Ct. at 1339.
Judge Learned Hand gave a similar and perhaps more forceful explanation for the rule in Gregoire v. Biddle, supra, 177 F.2d at 581 (quoted with approval by the Supreme Court in Barr v. Matteo, supra, 360 U.S. at 571-572, 79 S.Ct. at 1339):
"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in *408 the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation . . ."
The "official immunity" principle covers acts performed by federal employees in connection with matters committed to their control or supervision. E. g., Barr v. Matteo, supra, 360 U.S. at 573-574, 79 S.Ct. 1335; Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 139, certiorari denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938).
In applying the Barr case to the situation at hand, there is no doubt that Defendants Moline and Kern should be afforded "official immunity."
The Complaint, both on its face and in light of the affidavits supplied by Defendants Moline and Kern, rests solely upon acts performed by Security Exchange Commission employees as part of their duties.
Clearly, if the Bivens case were to be applied to this situation, Defendants would clearly be afforded immunity. Defendants were acting within "the outer perimeter of their line of duty" and the acts performed were the sort of "discretionary" acts that require the protection of immunity.
The Court also finds other defects in the Complaint that would require dismissal of this suit. Rule 8 (a)(1) and (2) of the Federal Rules of Civil Procedure require a party to include in his Complaint a short and plain statement of his claim and the grounds upon which the Court's jurisdiction depends. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Illinois Terminal Rail Company v. Friedman, 208 F.2d 675 (8th Cir. 1953). This portion of Rule 8 has been interpreted to mean that the Complaint "will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). While Conley also stands for the proposition that a complaint need not set out in detail the facts upon which the claim lies, the allegations of the complaint herein clearly fail to meet the minimal standards of "fair notice". Plaintiff makes vague allegations of conspiracy and deprivation of constitutional rights, yet no attempt is made to define the conspiracy or demonstrate how any of the defendants participated in the alleged conspiracy. The statement of the court in Negrich v. Hohn, 379 F.2d 213, 215 (3rd Cir. 1967) is particularly applicable:
"The complaint is insufficient because it is broad and conclusory. Its insufficiency lies in its failure to state facts in support of its conclusions. The charges . . . are made against the defendants generally and not against any particular defendant."
Plaintiff has alleged in the Complaint that the subpoenas duces tecum, pursuant to which Defendant Symington produced the records of Diversified Brokers for the Grand Jury in his capacity as Receiver, does not exist. However, said subpoenas were properly issued and served upon Defendant Symington on March 19, 1969 by John A. Schicker, a United States Postal Inspector.
Plaintiff has also alleged that defendant Symington failed to qualify as Receiver of Diversified Brokers inasmuch as he failed to secure the bond as ordered by the Court. This argument was *409 previously presented to the Court in Smallwood v. United States, U.S.D.C., E. D.Missouri, Civil Action No. 72-C-333 (a), and denied by the Court in its Memorandum and Order filed September 19, 1972, to which opinion was attached a copy of the bond.
Plaintiff has further suggested that the trustee bond in bankruptcy Cause No. 69-B-569 was not filed pursuant to the Bankruptcy Act. However, the Bond of Trustee was filed on June 19, 1969.
It is apparent from many of plaintiff's allegations that plaintiff has instituted this action seeking redress as a result of his conviction for securities and mail fraud. Many of plaintiff's allegations contained in the instant action have previously been presented to the courts in the original criminal trial and in various hearings ancillary to the trial. The conviction resulting from that trial was affirmed on appeal by the Court of Appeals for the Eighth Circuit (443 F. 2d 535) and the Supreme Court thereafter denied certiorari (404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93.) Similar arguments were also submitted to the Court in plaintiff's petition under 28 U.S.C., Section 2255, Smallwood v. United States, U.S.D.C., E.D.Missouri, Civil Action No. 72-C-333(A), which motion to vacate judgment and sentence was denied by the Court on September 19, 1972. Inasmuch as many of Plaintiff's allegations were made in prior judicial matters and dealt with by the Court, Plaintiff is collaterally estopped from making the allegations essential to the instant action. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).
In light of the reasoning set forth herein, the Court holds that the Complaint fails to state a claim upon which relief can be granted and the case must be dismissed. However, because affidavits were submitted by the Defendants which were the basis of the arguments in their briefs which disclose no dispute as to any material fact, and which were relied upon by the Court for decision in this opinion, it is appropriate for the Court to enter Summary Judgment for the Defendants inasmuch as Defendants are entitled to judgment as a matter of law.
It is so ordered.