Richard A. **HANDVERGER** et al.
Plaintiffs-Appellants,

v.

Richard A. **HARVILL** et al.,
Defendants-Appellees.

No. 71–1557.

United States Court of Appeals,
Ninth Circuit.

May 22, 1973.

Rehearing Denied June 13, 1973.

W. Edward Morgan (argued), William Messing, of Messing & Hirsh, Tucson, Ariz., for plaintiffs-appellants.

Thomas Chandler (argued); of Chandler, Tullar, Udall & Richmond; Lesher & Scruggs, Tucson, Ariz., for defendants-appellees.

Before BARNES, DUNIWAY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

## OPINION

Plaintiffs brought this action in the district court under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The district court held for the defendants, and the plaintiffs appeal. We affirm.

The seven appellants claim that they suffered damages when they were prevented from holding a meeting styled a "Vietnam Commencement" on the grounds of the University of Arizona. Six of the appellants were students or professors at the university; one was on the faculty of another university and was to be a guest speaker at the "commencement". The appellees were officials of the university.

In early May of 1968, a reservation for May 29 was made on behalf of the Student Peace Association (SPA), a recognized campus group, for the senior

ballroom located on the campus.[1] The purpose of the reservation was to set aside a time and place for the "commencement." The "commencement" was to honor those draft-eligible men of the university who signed pledges not to serve in the armed forces until the United States was no longer involved militarily in Southeast Asia. Also to be honored were those persons, not eligible for the draft, who pledged their support to those pledging to refuse induction.[2] Various speakers were to be featured, most of them from the university community. On about May 7, approximately 2,200 invitations to the "commencement" were mailed to senior and graduate students at the university. These invitations contained the statement, "please feel free to invite your parents, relatives, and friends."

At about this time appellee Johnson, vice president of the university in charge of community relations, learned of the planned activity. After consultation with appellee Harvill, president of the university, Johnson cancelled the reservation. It was felt that the reservation was improperly made, that use of the term "commencement" might mislead the public to the conclusion that the university was sponsoring the event, that the activity might touch off violence, and that the event probably involved illegal activity. Later, Johnson met with leaders of the SPA. They said that they would be willing to change the name of the event from "commencement" to "convocation," and would be willing to limit the meeting to faculty and students. However, Johnson refused to change his mind. The court found that Johnson acted in good faith.

The SPA then tried to arrange to hold the "commencement" off campus. A local church agreed to make its facilities available. This offer was withdrawn just a few days before the event was to be held.

On the morning of May 28, 1968, appellant Axler, a leader of the SPA, telephoned President Harvill to see whether the "commencement" could be held on campus after all. Harvill refused, for the reasons discussed above. Later that same morning Axler had delivered to Harvill a letter informing him that the SPA intended to use the campus for the ceremony, whether permission was granted or not. Harvill got in touch with appellee Hall, a lawyer and advisor to the Board of Regents and administration, and showed him the Axler letter. Harvill told Hall that if he, Harvill, could legally stop the "commencement" from taking place on university property, he wanted to do so. He asked Hall to find out if this could be accomplished. Hall talked with various university officals, and then talked again with Harvill. He told Harvill that in his opinion the activity would likely violate federal law,[3] and that he was going to discuss the matter with the office of the Attorney General of the State of Arizona. The Attorney General is by statute legal advisor to the University of Arizona Board of Regents and administration. Hall talked with the Attorney General's office, and was told to take the matter up with William Kimble and Robert Lesher, attorneys who were special assistants to the Attorney General.

That afternoon a meeting was held involving Kimble, Lesher, Johnson, Hall,

1. There is a dispute over whether the reservation was properly made. The reservation was made through the Campus Draft Opposition Committee, not a recognized campus group. Appellants contend that this organization was but a subcommittee of the SPA, acting on behalf of SPA. We will assume that the reservation was properly made, and that whatever activities were undertaken by the

Campus Draft Opposition Committee were undertaken by the SPA.

2. The appellants have been careful to point out that with respect to the first group pledges were sought only from among those who had already decided not to participate in the war effort.

3. Specifically, that it would violate 50 U.S.C. App. § 462(a).

and other university officials. Harvill was not present. At the meeting various manners of responding to the threatened "commencement" were discussed, including the use of a temporary restraining order. Another meeting was held the next morning, May 29, involving substantially the same group. By the end of that meeting a final decision had been made to seek a restraining order. The court found that this decision was made independently by Lesher and Kimble on the basis of the information that they had been given. The basis of the decision was their opinion that the "commencement" would involve illegal activity. The decision had the approval of the administration officials present. A Superior Court judge issued a temporary restraining order at about 1:30 P.M. on May 29, in response to a complaint drawn up by Kimble and Lesher. The judge handled the request on an *ex parte* basis.

When the appellants and others arrived at the campus that evening, they were served with a temporary restraining order restraining them from entering the campus. The group did not try to enter the campus, but instead assembled at an area near a student union building, which they apparently believed was not university property. There the group attempted to begin the ceremony, but were informed that they were on university property and were asked to leave. Subsequently the group, by then substantially reduced in number, assembled at a public park where the "commencement" was held. There were no incidents of violence.

Appellants argue that the action of the university officials deprive them of their constitutional rights of free speech, association, and assembly. Appellees contend, *inter alia*, that they should not be held liable because their actions were taken in good faith. We agree.

The activity which the appellants were hoping to carry out arguably involved illegal activity. The invitation to the "commencement" stated as much. In relevant part the invitation reads:

"If you are a *student* who opposes the American involvement in Vietnam, and if you have decided not to participate in the war, we ask that you sign a pledge ['Our war in Vietnam is unjust and immoral. As long as the United States is involved in this war I will not serve in the Armed Forces.'] to refuse induction, return it to Campus Draft Opposition, and attend a special university convocation—Vietnam Commercement—in honor of all such signers at the University of Arizona.

"If you are a *faculty member*, we ask you to consider pledging your support to students whom [sic] freely choose not to serve ['Although I am not subject to the draft, my opposition to our government's policy in Vietnam compels me to support those draft eligible Americans who have pledged to refuse induction. . . . I pledge to support these young Americans with encouragement, counsel, and financial aid.'] and to attend the Vietnam Commencement to honor those students who have demonstrated their moral courage and integrity by signing a pledge to refuse induction. While we consider this an exercise of our 1st, 13th, and 14th amendment rights, both the *signing* of the faculty pledge and the *performance* of the acts described in it *may* be legally construed to be a felony as specified in the Universal Military Training & Service Act. The possibility of such charges being brought against any and all signers is subject to unpredictable political circumstances. The risks may be considerable, but we believe that the costs of inaction are far greater." [Emphasis in original.]

50 U.S.C. App. § 462(a) provides in relevant part:

"[A]ny person . . . who knowingly counsels, aids, or abets an-

other to refuse or evade registration or service in the armed forces . . . shall . . . be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment. . . ."

Those conducting the "commencement" might be considered to have been counseling others—the draft-eligible group—to refuse induction. Those in the second group signing pledges might be considered as agreeing to carry out illegal activity—supporting others deciding to refuse induction.

Thus, the opinions of Hall, Kimble, and Lesher that the "commencement" would probably involve illegal activity were arguably well founded. Furthermore, there had been numerous threats made to Harvill, Johnson, and other administration officials that violence would occur if the "commencement" were to take place. In this situation Harvill determined to stop the "commercement" if he could do so legally. He put the matter in the hands of Hall, a lawyer, who in turn sought the advice of two assistants from the Attorney General's office, Kimble and Lesher. It was the opinion of Kimble and Lesher that the proposed activity would violate federal law, and also that in the circumstances a temporary restraining order prohibiting the activity from taking place was proper. The court's findings make it clear that all defendants acted in good faith.

■ The defense of good faith to an action brought under 42 U.S.C. § 1983 is a recognized one. In Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, police officers arrested sit-in demonstrators for violating a state statute. The state statute was subsequently found unconstitutional. The Supreme Court held that the defense of good faith and probable cause was available to the officers in an action brought under 42 U.S.C. § 1983. The Court reasoned that the officers could not be required to predict the constitutionality of the statute. See also Dodd v. Spokane County, 9 Cir., 1968, 393 F.2d 330, 335; Wilhelm v. Turner, 8 Cir., 1970, 431 F.2d 177, 182–183; Gillibeau v. Richmond, 9 Cir., 1969, 417 F.2d 426, 429 n. 3; Banish v. Locks, 7 Cir., 1969, 414 F.2d 638. Here Harvill and the other university officials were obviously in a dilemma. They could stop the activity, and possibly abridge the "commencement" group's constitutional rights. Or they could permit the activity, which they had been advised by counsel was probably illegal, to take place on campus. Their quandary was closely analogous to that of the police officers in Pierson.

■ That Harvill and other university officials acted in good faith is obvious. Fearing that the "commencement" would engender violence and involve violations of federal law, they turned the matter over to appropriate counsel. Counsel confirmed their fears of likely illegal activity, and advised that a temporary restraining order would be a proper means to prohibit its occurrence.[4] We hold that the defense of good faith is available to appellees.

Affirmed.

---

4. Sellers v. Regents of University of California, 9 Cir., 1970, 432 F.2d 493, involved facts similar to those here. In *Sellers* the challenge was to the constitutionality of a university regulation which prohibited illegal activity on campus. Acting under this regulation, and upon advice of counsel that the impending "Vietnam Commencement" involved illegal activity, university officials denied use of university property for the "commencement." The court held that the regulation was neither unconstitutional on its face nor as applied.